## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| OLUTOKUNBO EFUNNUGA | : |
| A.K.A | : CIVIL ACTION No 18-924 |
| SHAWN MOBLEY | : |
| vs. | : AMENDED COMPLAINT |
| STEVEN FARLEY | : FOR DAMAGES |
| ERIC LEE | : ( 42 U.S.C. § 1983 ) |
| JEFFREY GILSON | **FILED** |
| STEVEN BLACKWELL | MAY 0 3 2018 |
| RICHARD ROSS | KATE BARKMAN, Clerk |
| CITY OF PHILADELPHIA | By_____Dep. Clerk |

**PLAINTIFF ALLEGES:**

### AMENDED CLAIM FOR RELIEF

59. The Plaintiff reasserts all of the allegations contained in The Original Complaint For Damages, and incorporate each here as if fully set forth.

60. The acts and conduct alleged in paragraph 13-59 of Original Complaint, constitute torts under the laws of the state of Pennsylvania, including the torts of:

g. Civil Conspiracy,

h. Municipal Liability,

i. Invasion of Privacy,

j. Intentional Infliction of Emotional Distress, and

k. Failure to Intervene.

### MEMORANDUM OF LAW

### PROBABLE CAUSE

1. "[P]robable cause exists whenever reasonable trustworthy information or circumstances within a police

-1-

officers knowledge are sufficient to warrant a person of
reasonable caution to conclude that an offense has been
committed by the person being arrested.'" **Paszkowski**, 581 F.
**App'x** at 152 (quoting United States v. Myers, <u>308</u> <u>F.</u> <u>3d</u>
<u>251,</u> 255 (3d Cir. 2002)). (See EX-A, Ch.20, line 16-22)
    2. "In determining whether probable cause exists, the
court should assess whether the objective facts available
to the arresting officers at the time of the arrest were
sufficient  to justify a reasonable belief that an offense
had been committed. Courts apply a common sense approach
based on the totality of the circumstances." **Hughes v.**
**Shestakov**, No. 00-6054, 2002 U.S. Dist. Lexis 13817, 2002
WL 1742666, at *2 (E.D. Pa. July 22, 2002).

<u>EXIGENT CIRCUMSTANCES</u>

    As the third circuit has held, factors that support a
finding of exigent circumstances include:
1. the gravity of the crime that has been committed;
2. a reasonable belief that the suspect is armed;
3. a clear showing of probable cause based upon reasonably
trustworthy information; (See EX-F, Ch.16, line 21-Ch.17 line 3)
4. a strong belief that the suspect is in the premises;
5. "a likelihood that the suspect will escape if not
swiftly apprehended"; and
6. peaceable entry, affording the suspect " an opportunity
to surrender... without a struggle and thus to avoid the
invasion of privacy involved in entry into a home.

FALSE ARREST AND IMPRISONMENT

<u>COUNT 1</u>

    1. Under Pennsylvania law, false arrest or imprisonment
consists of an arrest or restraint without adequate legal
justification. False arrest and/or imprisonment are torts
consisting of restraint imposed on a person's liberty,
without probable cause. False imprisonment is a misdemeanor
consisting of knowingly restraining another. They are state

law claims which are essentially the same. False arrest and
false imprisonment are both torts that disqualify sovereign
immunity. To prove a claim for false arrest and
imprisonment, a plaintiff must show that:
a. a defendant intended to confine plaintiff;
b. a defendant performed a action that directly or
indirectly produced such confinement; and
c. plaintiff was either conscious of, or harmed by the
conduct.

2. The claims are nearly identical and generally
analyzed together. See Brockington v. City Of Phila.,354 F.
Supp. 2d. 563,571 n.8 (E.D. Pa. 2005)(citation Omitted).
Both claims "are predicated on an arrest made without
probable cause in violation of the Fourth Amendment."
Wilson v. Dewees, 977 F. Supp. 2d 449, 455 (E.D. Pa.
2013)(citation and internal quotation marks omitted).
Accordingly, an arrest supported by probable cause will
negate both claims. See Groman, 47 F. 3d at 636.

3. "Probable Cause to arrest requires more that mere
suspicion; however, it does not require that the officer
have evidence sufficient to prove guilt beyond a reasonable
doubt." Orsatti v. New Jersey State Police, 71 F. 3d 480,
482-83 (3d Cir. 1995)(citing United States v. Glasser, 750
F. 2d 1197, 1205 (3d Cir. 1984)).

4. A False imprisonment claim brought under 42 U.S.C. §
1983 is grounded in the Fourteenth Amendment protection
against deprivation of liberty without due process of law.
Baker v. McCollan, 443 U.S. 137, 142, 99 S.ct. 2689, 61 L
Ed. 29433 (1979).

5. A false imprisonment claim, which is based on an
arrest made without probable cause, is also based on the
Fourth Amendments guaranty against unreasonable seizures.
Groman, 42 F. 3d at 636; Barna v. City Perth Amboy, 42 F.
3d 809, 820 (3d Cir. 1994).(See EX-F,Ch. 24, line 24)

6. Under Pennsylvania's Political Subdivision Tort
Claims Act, municipal employees are generally immune from

liability to the same extent as their employing agency, so long as the act committed was within the scope of the employee's employment. 42 Pa. Const. Stat. § 8545.

7. However, there is an exception to this general rule: employees are not immune from liability under § 8545 where their conduct amounts to actual malice or willful misconduct. Willful misconduct has been defined by the Pennsylvania Supreme Court as conduct whereby the actor desired to bring about the result that followed or at least was aware that it was substantially certain to follow, so that such desire can be implied. Otherwise stated, the term willful misconduct is synonymous with the term intentional tort.

8. Where a person is imprisoned after having been arrested without probable cause, the imprisonment is deemed false because it was based upon an illegal arrest. Once the person is held on charges by a Judicial Authority, the detention is no longer dependant on the false arrest, but rather on a judicial determination. In other words, at the time the plaintiff is held by a judicial authority, his claim transforms from false imprisonment to malicious prosecution---the false imprisonment ends and the malicious prosecution begins at that point.

A) Defendant Steven Farley falsely arrested plaintiff as their were no objective facts to reasonably believe that plaintiff was at the location with the intention to distribute nor, actually and/or constructively possess marijuana. (See EXA, Ch. 10, line 1-25, Ch. 11, line 1-7)

B) Defendant, Officer Farley ascertained that plaintiff was not a resident of the building when plaintiff told Officers' Eric Lee and Steven Farley that he was the property manager. Officer Farley, on more than one occasion, instructed plaintiff to leave the property because he was not a resident.

C) Officer Farley personally observed Ibrahim Howard in possession of keys when he unlocked the basement gate,

-4-

demonstrating both the power and the intention, [at any given time], to exercise dominion or control over the basement and any contents therein.

D) Defendant Farley demonstrated willful misconduct by intruding upon the seclusion of the basement to conduct a warrantless search, without exigent circumstances or consent from anyone with the authority to do so.

E) Defendant Farley demonstrated an intention to confine plaintiff with his hostile tone while speaking to him, as well as his indifferent treatment of plaintiff throughout the encounter.

## MALICIOUS PROSECUTION
## COUNT 2

1. An arrest lacking probable cause, as is the case here, can support a cause of action not only for false arrest and false imprisonment, but also for malicious prosecution. Although the tort of false imprisonment ends when legal process begins, "unlawful detention forms part of the damages for the entirely distinct tort of malicious prosecution, which remedies detention accompanied, not by absence of legal process, but by wrongful institution of legal process." **Wallace, 549 U.S. at 390.** (See Ex-B)

2. Unlike a claim for false imprisonment, a claim for malicious prosecution accrues upon the favorable termination of criminal proceedings. **Curry v. Yachera, 835 F. 3d 373, 379 (3d Cir. 2016)(quoting Heck v. Humphrey, 512 U.S. 477, 489, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994).**

3. To establish a Fourth Amendment claim of malicious prosecution under § 1983, a plaintiff must show that:
a. the defendant initiated a criminal proceeding;
b. the criminal proceedings ended in his favor;
c. the proceeding was initiated without probable cause;
d. the defendant acted maliciously or for a purpose other than bringing him to justice; and
e. he suffered deprivation of liberty consistent with the

-5-

concept of seizure as a consequence of the legal proceeding. **Kossler v. Crisant, 564 F, 3d 181, 186 (3d Cir. 2009)(citing Estate of Smith v. Marasco, 318 F. 3d 497, 521 (3d Cir. 2003)).**

4. To establish a claim of common-law malicious prosecution resulting in a criminal proceeding under Pennsylvania law, a plaintiff need not show the fifth element, a seizure consistent with the Fourth Amendment. **Id at 186 n.2 (citing Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 791 (3d Cir. 2000).**

A) Defendants Steven Farley and Eric Lee were the arresting officers. Detective Steven Blackwell was affiant of affidavit of probable cause. Detective Jeffrey Gilson executed the search warrant. All were responsible for the institution and continuance of the felony criminal proceedings against plaintiff.

B) The felony criminal proceedings were wholly without legal or probable cause, were instituted and continued with falsified information and malice.

C) On 3/13/2018, the plaintiff was found **NOT GUILTY** by way of bifurcated waiver trial, presided over by Judge Roman.

D) A copy of Motion to Suppress transcripts, Civil Forfeiture docket, Criminal Docket, Federal Revocation docket, and Violation of Supervised Release Petition. are attached as exhibit A,B,C,D,E,F, respectively to this memorandum and incorporated by reference.

E) Plaintiff has been deprived of his liberty and continues to suffer from injuries related to the criminal proceedings initiated by defendants above.

**EXCESSIVE FORCE**

**ASSAULT AND BATTERY**

**COUNT 3**

1. To state a claim for excessive force as an unreasonable seizure under the Fourth Amendment. a plaintiff must show:

-6-

a. That a "seizure" occurred; and

b. that the use of force was objectively "unreasonable."
Kopec v. Tate, 361 F. 3d 772, 772, 776 (3d Cir. 2004).

2. A Fourth Amendment "seizure" occurs when an officer
"restrains the freedom of a person to walk away." Tennesse
v. Garner, 471 U.S. 1, 7, 105 S. Ct. 1894, 85 L. Ed. 2d 1.
(1985).

3. Factors to consider in making a determination of
reasonableness include the severity of the crime at issue,
whether the suspect poses an immediate threat to the safety
of the officers or attempting to evade arrest by flight.
See Graham, 490 U.S. at 396, 109 S. Ct. at 1872.
Reasonableness" under the Fourth Amendment should
frequently remain a question for the jury, "Abraham, 183 F.
3d at 290. Other factors include "the duration of the
[officer's] action taken in the context of effecting an
arrest, the possibility that the suspect may be armed, and
the number of persons with whom the police officers must
contend at one time" Sharrar v. Felsing, 128 F. 3d 810, 822
(3d Cir. 1977).

4. Under Pennsylvania law "an assault committed by an
employee upon another for personal reasons or in an
outrageous manner is not within the scope of [his or her]
employment." Costa v. Roxborough Mem'l. Hosp. 708 A. 2d
490, 493 (Pa. Super. Ct. 1988).(See EX-A, Ch. 19, line 1-6)

5. An assault is "an intentional attempt by force to do
injury to the person of another and a battery is committed
whenever the violence menaced in an assault is actually
done, though in ever so small a degree, upon the person."
Rosembert, 14F. Supp. 3d at 644.

6. To establish a claim of battery, a person must act
intending to cause a harmful or offensive contact with
another person, or an imminent apprehension of such
contact, and the offensive contact with the person is the
direct or indirect result. Herr v. Booten, 398 Pa. Super.
166, 580 A. 2d 1115, 1117 (Pa. Super. Ct. 1990);

Restatement (Second) of Torts § 18(1)(1965).

A) Defendant Officer Steven Farley did indeed use excessive force, assault and commit battery in his apprehension and seizure of plaintiff's person without probable cause or legal privilege.

B) The offensive manner in which Officer Farley twisted the plaintiff's arm, forced plaintiff upon the wall, and used his service weapon to prod the plaintiff demonstrated malicious intent.

C) It was objectively unreasonable for the Officer to even brandish his service weapon, as plaintiff had been subjected to multiple bodily searches throughout the duration of the encounter and did not pose an immediate treat to him or his partner.

## ABUSE OF PROCESS
### COUNT 4

1. The tort of abuse of process requires that the defendant:

a. "used a legal process against the plaintiff;

b. primarily to accomplish a purpose for which the process was not designed; and

c. harm has been caused to the plaintiff." Shiner v. Moriarty, 706 A. 2d 1228, 1236 (Pa. Super. Ct. 1998)(internal citation omitted).

2. "The common law tort of abuse of process involves the perversion of legal process after it has begun in order to achieve a result for which the process was not intended." Al Hamilton Contracting Co., 644 A. 2d at 192.

3. A cognizable claim for abuse of process can arise in the criminal or civil context. General Refractories Co. v. Fireman's Fund Insurance Co., 337 F. 3d 297, 306 (3d Cir. 2003).

4. To State a cause of action for abuse of process under Pennsylvania law, plaintiff must allege an ulterior motive and a use of the process for a purpose other than

that for which it is designed. The existence of probable
cause is immaterial. Plaintiff need not show that the prior
proceedings were terminated in his favor.

    5. "An abuse of process claim is actionable under §
1983." **Felker v. Christine, 796 F. Supp. 135** 142 (M.D. Pa.
**1992).** "The claim can be maintained [w]hen process is used
to effect an extortionate demand, or to cause the surrender
of a legal right, or is used in any other way not so
intended by proper use of the process.'" **Id. (alteration
original)**(quoting Brown v. Johnston, **675 F. Supp. 287, 290**
(W.D. Pa. 1987)).

    6."In a malicious abuse of process case, presence or
absence of probable cause is irrelevant." **Jennings v.
Shuman, 597 F. 2d 1213,** 1218 (3rd Cir. **1977).** This is
because "a § 1983 claim for malicious abuse of process lies
where prosecution is initiated legitimately and there after
is used for a purpose other than that intended by the
law."' Rose v. Bartle, **871 F. 3B1.**,350 n. 17 (3d Cir.
**1989)**(quoting Jennings, 567 F. 2d at 1217). When evaluating
the claim, " the only thing that is important is the
purpose of which [the process] is used. Therefore, presence
or absence of probable cause is not important." **Jennings,
567 F. 2d at 1218.**

    7. It only matters that the legal process was used "as
a tactical weapon to coerce a desired result that is not
the legitimate object of the process." **Id.** "malicious use
of civil process, while abuse is concerned with a
perversion of a process after it is issued." **McGee v.
Feege, 517 Pa. 247. 535 A. 2d 1020, 1023 (Pa. 1987).**
A) Police Officer Steven Farley predicated his decision of
arresting plaintiff based upon his acquired knowledge of
plaintiff being on a conditional release from federal
court. He was both aware of, and understood the extent of
legal injury that an arrest would create for the plaintiff.
Defendant, Officer Farley also understood that the
circumstances surrounding his unwarranted search were

unlawful, as he referred to the situation as a "cluster-
fuck".

B) Defendant Officer Farley abused the civil process, both
maliciously and otherwise by confiscating $301.00 USD from
plaintiff, subjecting him to civil forfeiture proceedings,
with no evidence to support a claim that the funds were
used in illegal transactions.(See Ex-C+Ch)

C) Defendant, Officer Farley abused the criminal process
while initiating an arrest lacking probable cause;
continued the process by providing false information on
arrest reports to justify his unlawful acts; then proffered
untrue testimony under oath during legal proceedings.

D) Defendant, Officer Farley demonstrated his intent to
pervert the criminal process with his revelations to
Detective's Gilson and Blackwell that, "it was a cluster-
fuck," and with his recognition that plaintiff " is on
parole, so he'll sit anyway".

E) Defendant, Detective Steven Blackwell abused the
criminal process by submitting an untrue statement into the
Affidavit of Probable Cause and misleading the issuing
authority.

F) The contractual agreement of federal supervised release
was not intended to be used as a means of depriving a
releasees of his constitutional rights. However, it was
abused as a collateral consequence of an unlawful arrest,
detention, and legal proceedings, as is the case here.

G) Ultimately, the legal proceedings that were weaponized
in a malicious and perverted abuse of the criminal and
civil process, were disposed of in favor of plaintiff.
However, plaintiff was caused to be harmed by expending
large sums of money in the legal defense of his person and
property, as well as his deprivation of liberty.

## CIVIL CONSPIRACY

### COUNT 5

1. Generally, to establish a civil conspiracy claim, "a

plaintiff must show that two or more conspirators reached an agreement to deprive him of a constitutional right under color of law." **Laurensau v. Romarowics, 528 Fed. Appx. 136, 140 (3d Cir. 2013)).**

2. In Pennsylvania, "[t]he essential elements of a claim for civil conspiracy are as follows:
a. a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose;
b. an overt act done in pursuance of the common purpose;
c. actual legal damage," **Williams v. W. Wayne Sch. Dist.., civil No. 12-cv-2074, 2013 U.S. Dist. Lexis 125282, 2013 WL. 4718920, \*8 (M.D. Pa. 2013)(citing Phillips v. Seligi, 2008 PA. Super. 244, 979 A. 2d 420, 437 (Pa. Super. Ct. 2008)).**

3. To state a conspiracy claim under § 1983, a plaintiff must allege:
a. "the existence of a conspiracy involving state action; and
b. a deprivation of civil rights in furtherance of the conspiracy claim must demonstrate a "meeting of the minds." **Startzell v. City of Phila., 533 F. 3d 183, 205 (3d Cir 2008)(internal quotation marks and citation omitted).**
A) A proverbial meeting of the minds occurred on the evening of the arrest, as defendants Detectives' Blackwell and Gilson were later revealed to be the persons who physically met with defendant Officer Farley, immediately after plaintiff was arrested and placed into the squad-car. The subject matter of that conversation pertaining to the arrest in the term "cluster-fuck," and "he's on parole, so he'll sit anyway," demonstrate that all parties involved were made aware and in agreement of the size and scope of the unlawful undertaken.
B) Defendant Officer Farley initiated the conspiracy by first fabricating information to support a finding of probable cause on his incident report. Then providing false

-11-

testimony during legal proceedings.

C) Defendants Steven Blackwell and Jeffrey Gilson
contributed and furthered the joint undertaken by
misrepresenting facts in the warrant affidavit and
executing a facially defective warrant, respectively.

D) Defendants Officer Farley, Detectives Blackwell and
Gilson were successful in their objective in that the
plaintiff was injured by abuse of legal process and
eventually deprived of his liberty as a collateral effect
of the unlawful arrest, imprisonment then malicious
prosecution.

## MUNICIPAL LIABLILITY,
## RESULTING FROM,
## NEGLIGENCE AND GROSS NEGLIGENCE
## COUNT 6

1. Under the P.P.S.T.C.A., the act provides that , "no
local agency shall be liable for any damages on account of
any injury to a person or property caused by any act of the
local agency or employee thereof or any other person," 42
Pa. Cons. Stat. § 8541. There are eight "acts" excepted
from the immunity granted under § 8541. See 42 Pa. Cons.
Stat. § 8542. Liability can be imposed for:

a. the operation of a motor vehicle in the possession or
control of a local agency;

b. **the care, custody or control of personal property in the
possession or control of a local agency;**

c. the care, custody or control of real property;

d. a dangerous condition created by trees, traffic
controls, or street lights;

e. a dangerous condition of utility service facilities;

f. a dangerous condition of streets;

g. a dangerous condition of sidewalks;

h. the care, custody or control of animals in the
possession or control of a local agency.

2. Under Pennsylvania law, "[a] successful negligence

claim require a plaintiff to allege facts which establish the breach of legally recognized duty of the defendant that is causally connected to the actual damages suffered by the plaintiff."

3. To prove negligence, a plaintiff may proceed against a defendant on theories of direct and vicarious liability, asserted either concomitantly or alternatively." **Scampone v. Highland Park Care Ctr., LLC. 618 Pa. 363, 57 A. 3d 582, 597 (Pa. 2012).**

4. "Liability for negligent injury is direct when the plaintiff seeks to hold the defendant responsible for harm that the defendant cause by breach of a duty owing directly to the plaintiff." **Id.** Vicarious liability "is a policy-based allocation of risk "that holds one party liable for the actions of another due to a preexisting relationship between the two parties. **Id. (citing Crowell v. City of Philadelphia, 531 Pa. 400, 613 A. 2d 1178, 1181 (Pa. 1992)).**

5. Negligence per se, meanwhile, is not a separate cause of action, but is instead an evidentiary presumption that, if established, constitutes proof of a breach of duty. See **Daniel Boone Area Sch. Dist. v. Lehman Bros., Inc., 187 F. Supp. 2d 400, 407 (W.D. Pa. 2002).**

6. Gross negligence requires something more than ordinary negligence, but does not rise to the level of intentional indifference to the consequences of one's acts. A) The City of Philadelphia, by and through its agents, servants, and employees, Defendant Officer Steven Farley, Detectives Jeffrey Gilson, and Steven Blackwell, who were negligent in the chain of custody, care and control of plaintiff's keys, which were confiscated at time of arrest, and either, intentionally discarded with malice or unintentionally misplaced, is vicariously liable for damages sustained to plaintiff.

B) As a direct and proximate result of the gross negligence of it's employees, plaintiff was caused to be harmed when

access of his vehicle, A 2005 Dodge Ram 1500 pick-up truck,
was granted to persons not permitted, and $1,200.00 USD,
$3,500.00 USD, in tools, and $2,000.00 USD in jewelry was
stolen from it. Plaintiff also was harmed by having to
expend large sums of money for a locksmith to gain access
into his home.

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### COUNT 7

1. To make a successful intentional infliction of
emotional distress claim, a plaintiff must identify actions
of an extreme or outrageous type. Extreme or outrageous
actions are atrocious, and utterly intolerable in civilized
society. They go beyond all possible bounds of decency.

2. A claim for I.I.E.D. requires four elements:
a. the conduct must be extreme and outrageous;
b. the conduct must be intentional and reckless;
c. it must cause emotional distress;
d. the distress must be severe. (See EX-G)

3. The Pennsylvania Supreme Court has stated that the
requirement of some objective proof of severe emotional
distress will not present an unsurmountable obstacle to
recovery. Those truly damaged should have little difficulty
in procuring reliable testimony as to the nature and extent
of their injuries. (See EX-G)

A) Defendant, Officer Steven Farley went above and beyond
the call of duty in his attempts to harass and intimidate
plaintiff. He returned to the property on two seperate
occasions following arrest to achieve that objective. His
objective came to fruition when the plaintiff attempted
suicide on 10/8/2016. (See EX-G)

B) Plaintiff was hospitalized at Fitzgerald Mercy hospital
in critical condition undergoing multiple surgeries and
life saving operations. He was released on 11/1/2016, into
the care and custody of Delaware County prison authorities
at George W. Hill correctional facility.

-14-

C) Plaintiff will continue to suffer lasting physical and emotional scars of the ordeal.

## INVASION OF PRIVACY
## COUNT 8

1. Pursuant to Pennsylvania law, there are four tort claims based upon the invasion of privacy:

a. "intrusion upon seclusion;

b. appropriation of name or likeness;

c. publicity given to private life; and

d. publicity placing a person in a false light."  Santillo v. Reeden, 430 Pa. Super. 290, 294, 634 A. 2d 264 (1993).

2. A defendant is liable for the tort of intrusion upon seclusion "when he has intruded into a private place, or has otherwise invaded a private seclusion that the plaintiff has thrown about his person of affairs." Merring v. City of Carbondale, Penn., 558 F. Supp. 2d 540, 2008 WL 4682769, at *3 (M.D. Pa. 2008)(quoting Harris v. Easton Pub. Co., 335 Pa. Super. 141, 153, 483 A. 2d 1377 (Pa. Super. Ct. 1984).

A) Defendant Officer Steven Farley did intrude upon the seclusion of the basement at 728 N. 63rd St., without probable cause, consent, or exigent circumstances, and conducted and unlawful search and seizure.

## FAILURE TO INTERVENE
## COUNT 9

1. The 3rd circuit has held that if a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation such as an unlawful search, invasion of privacy, assault and battery takes place in his presence, the officer is directly liable under 42 U.S.C.S. § 1983.

2. One who is given the badge of authority of a police officer may not ignore the duty imposed by his office and fail to stop other officers who violate the constitutional

-15-

rights of another person in his presence or otherwis within his knowledge. The approving silence emanating from the officer who stands by and watches as others unleash an unjustified assault contributes to the actual use of excessive force. Such silence is an endorsement of the constitutional violation resulting from the unlawful acts. A) Defendant Police Officer Eric Lee is liable for failure to intervene as he was present while defendant, Police Officer Farley unlawfully searched, seized, arrested, imprisoned, assaulted, battered, and used excessive force upon the plaintiff and invaded the privacy of the basement of 728 North 63rd Street, Philadelphia, Pennsylvania.

RESPECTFULLY SUBMITTED,

O-te

OLUTOKUNBO EFUNNUGA

DATE 4|1|2018 .



FILED

MAY 03 2018

By KATE BARKMAN, Clerk
Dep. Clerk

**AFFIDAVIT OF ARREST**

( Events leading up to Arrest )

On the evening of March 1, 2018, at or about 10:30 pm, I ,Olutokunbo Efunnuga, was arrested on the premises of 728 North 63rd Street, Philadelphia, Pennsylvania. Charged with Possession of Controlled substance, ( marijuana ), and Possession of Drug Paraphernalia. The property is a red brick and stone faced, twin, three story house with an adjacent walkway on one side, separating it from the next house. There is a small backyard with a masonry wall and a cyclone gate providing access to a rear alleyway.

It is a multi-unit residential building with four housing units and an unfinished basement. It is comprised of a one bedroom apartment on the first floor; two efficiencies on the second floor; a two bedroom apartment on the third floor; and a basement used for storage and utilities

The basement's dimensions are 30 feet by 110 feet. Which has three rooms separated by drywall partitions. There is a front porch that provides access to the first floor apartment only. A rear porch provides access to the first, second, and third floor units. Underneath the rear porch is the only access to the basement.

All residents are responsible for their own utilities except for the second floor residents. The second floor tenants are on rooming leases and utilities are included with their monthly rent. The electricity, water and gas services are in the landlord's name. Tenants of the second floor refused to pay rent,and the electricity in that unit was disconnected. That tenant began to access the basement without permission in order to restore power to their unit.

On the day of the arrest, I had been recieving calls from the first floor tenants reporting that people were breaking into the basement. I was also contacted by the landlord, ( Olukorede Efunnuga ), at around 8:30 pm to address the issue with the second floor tenants.

When I arrived at 728 North 63rd street, I was met by a tenant of the property, Ibrahim Howard, who also aides in maintaining the property and does odd jobs such as snow removal and trash removal for a reduced monthly rent. Mr. Howard had the only keys to a chain and

-1-

lock placed on the metal gate that secured the basement. He placed it there when the lock on the gate was broken by second floor tenants who were accessing it.

He unlocked the basement allowing me access to it. I entered and began disconnecting the power source for that unit, via the electrical panel. As I was doing so, residents from the second floor began to enter into the basement and confronted me. About five or six people congregated around me and were aggressively questioning and gesturing at me with their hands. Before I could explain who I was and my purpose for being there, I was struck in the face by a tall man that I did not know to be a tenant. I instinctively retaliated with a punch back and a fight began. Other people began to attack me by kicking and punching me in my lower back and head. In a short amount of time everyone was shouting and fighting. Ibrahim jumped in to quell the altercation. Which provided me with an opportunity to dial "911" and report the assualt.

It took the police about 15 minutes to arrive. The commotion had moved to the backyard and adjacent walkway by then, and the crowd had increased in size to around 10 or 12 people.

Police Officer's Steven Farley and Eric Lee were the first on the scene. As they approached us, I heard a woman loudly say, "here he is", "he has been here the whole time". The two Officer's initially separated me from the crowd, with myself in the walkway with officer Lee, and officer Farley in the backyard with the crowd.

I was first asked for identification, which I provided to Officer Lee. Next I was asked to put my hands on the building and to submit to a frisk, which I complied. Immediately after the body frisk, I was questioned regarding my relation to the property and my purpose for being there. I answered that I was the brother of the landlord, Olukorede Efunnuga. I am also the property manager, and I was here to address an issue with the electricity. I proffered that, while attempting to achieve that objective, I was confronted and attacked by the people that were there. I began to explain that I was the one who called in the complaint, when Officer Farley walked up with an irate and combative tone, questioning the truthfulness of what I was saying. I continued that I was assaulted and turned around to show

them the physical signs of my claims. I requested that he inquire with police dispatch to confirm my claims. He did so and when my claims were confirmed, he took an even more hostile tone. Officer Farley stated that the police had recieved multiple calls for disruption of electricity and disturbances on that property. He continued that, it was illegal to disrupt utility services and, if I did not leave the premises immediately, I would be arrested. I responded that I am the property manager and had every legal right to be there and also to disrupt the electricty as it was in the landlords name. I said that I had recieved numerous phone calls about people breaking into the basement and was contacted at my office that I was to come to the property to disconnect the electricty.

Officer Farley called me a "smart ass," snatched my driver's license from my hand and directed me to walk towards the front of the property and into the street, where the squad car was double parked.

Once Officer's Farley, Lee and myself arrived at the squad car, Officer Farley opened the front passenger door, sat down, made a call on the police radio, then began to enter information into a digital device located on the center console of the vehicle. At the same time Officer Lee, and I stood on the curb engaged in conversation pertaining to his personal experience with the rental business and his empathy for my situation.

While still in conversation with Officer Lee, Officer Farley walked over to us with my drivers license in his hand. At the same time he stated that he was informed of the fact that I was on supervised release and that if I didn't "get outta here now," he would "send my ass to jail for violating". I replied that I had done nothing wrong and that I was the complainant, yet I was being treated with indifference. He responded, "leave now before I change my mind".

I informed the Officers that I needed to retrieve my tools and car keys which were dropped during the altercation and that I would be leaving. Officer Farley responded that, if he had to return to the property again today, I would be sent to jail. He returned my identification to me and I turned to walk back to the property, through the walkway and into the basement.

When I arrived at the basement gate, I noticed that it was locked.

-3-

In a harsh tone, I demanded that it be opened immediately. Ibrahim Howard unlocked the gate and I proceeded into the basement. The lights were not on and I began to canvas the area closest to the electrical panels, with limited light visibility. At the same time Officer Farley entered the basement, without consent or notice. He had a flashlight and aided in my search. I quickly found my tools and keys, thanked him and proceeded to exit the basement, with him leading the way with the light from his flashlight.

I closed the interior basement door, which did not have a door knob, hardware, or locking mechanism. We both walked outside and I shut the metal gate effectively securing the property. At no time did I request for the Officer to aid in securing the premises.

Once outside, I noticed Ibrahim Howard was standing on the rear porch with the chain and lock still in his hands. He asked me if I had a more heavy duty chain to secure the gate with. I shook my head in agreement as I proceeded to walk to my truck.

Officer Farley remained behind in the rear of the house with Ibrahim and the other 8-10 other tenants of the building, while I walked through the side walkway, past Officer Lee in the front of the house and onto the sidewalk to my truck which was parked about 10 cars length from the police cruiser.

I unlocked my truck with the keyless entry remote and placed my tools in the rear seat of the 2005 4 door Dodge Ram pick-up Truck. I removed a heavy duty tow chain from a gang-box in the truck-bed, then returned to the house. I again walked past Officer Lee, who at that time was sitting in the passenger seat of the squad car.

As I reached the side walkway I noticed Officer Farley directly in front of me approaching rapidly. As I came within 4 feet of him, I saw him reach for his side and draw his service weapon. At the same time he shouted for me to drop the chain and put my hands up. He then violently grabbed my arm while twisting it and forcing my body against a masonry wall and handcuffed my hands behind my back.

I did not resist, but protested as I was placed under arrest and accused of possession of drugs with the intent to deliver. I was again frisked by Officer Farley and my keys, cell phone, and wallet, (containing 3 forms of I.D and $301.00), was confiscated. I was

-4-

walked across the front of the house as neighbors and tenants stood
around watching. I then, was placed into the backseat of the squad
car while Officer Lee sat in the front passenger seat with the door
open.

 While handcuffed, I was placed into the back seat of the patrol car
by Officer Farley. I remained in the car, which was double-parked in
front of the property. More Officers arrived in patrol cars and
conversed with Officer Farley and Lee. Soon after, Officer Lee
departed with an Officer. However Officer Farley remained. In
conversations with other Police personnel, I over heard Farley refer
to the circumstances of my arrest as a "cluster-fuck". He explained
to others of how he came upon the "dope", and referred to me as a
"smart ass". He continued that he "would like to see me get outta
this shit", and "fuck it, he's on parole, he's on parole, so he'll
sit anyway."

 I was transported to the rear entrance of the 19th district
precinct, where Farley parked and filled out documents in the drivers
seat as I remained in the backseat. He then exited the vehicle and
entered the building. When he returned, he no longer had the
documents.

 The Officer reentered the vehicle and drove me to the 18th district
precinct and I was removed from the car and escorted into the
building, where I was uncuffed, searched and then processed before
placed into confinement.

 Hours went by before I appeared before Judicial Authorities and
formally charged. I was allowed a phone call and bail was set for
$10,000.

RESPECTFULLY SUBMITTED,

OLUTOKUNBO EFUNNUGA.

DATE 4/01/2018

**CASE MANAGER,**
Authorized by the Act of July 7, 1955, as
amended, to administer oaths (18 U.S.C. § 4004)

-5-

## AFFIDAVIT

### ( CRIMINAL PROCEEDINGS )

FILED
MAY 03 2018
By KATE BARKMAN, Clerk
Dep. Clerk

On 3/3/2016, I was transported by the Philadelphia Sheriffs to the Curran-Fromhold Correctional Facility. Upon arriving, I was again processed then housed on a cell block with other pre-trial inmates.

I was awaken in the early mourning hours of 3/4/2016, and released on bond pending trial. My property was returned to me from prison staff. However, I noticed that my keys were missing and were not on my property receipt. To gain access into my home I was forced to expend money on a lock smith. I later returned to 728 North 63rd street and discovered that my truck had been accessed without any evidence of a break-in. All of my tools were stolen as well as jewelry and $1,200.00 USD.

The same day, I went to the 19th district precinct to inquire with police personnel regarding my keys. I was told that the keys should have been put into my property and returned to me. I told them that they were not and was instructed to inquire with the arresting officer. However Officer Steven Farley was not on duty that day.

On 3/5/2016, I returned to the 19th district precinct and met with Officer Farley, who notified me that he did not know the where-abouts of my keys. He did, however, admit that they were not entered into evidence.

I had no choice but to shoulder the expense of having keys made to operate my truck. I continued to manage the property at 728 N. 63rd st., and on two occasions Officer Farley returned to harrass me.

In one incident he entered the basement while I was performing a repair to the hot water heater. I was taken by complete surprise and demanded to know why he and another Officer were there. He replied, in an arrogant tone , that he had been called about another disturbance and he

-1-

questioned me on what I was doing to the appliance. I replied that it was outrageous for him to be in the property without consent and he replied " aren't you in enough trouble. I thought you were on parole; why aren't you still in jail." At the same time, I stood up from the kneeling position that I was in and he took the same position that I was in and used his flashlight to check the pilot mechanism that I was working on. Afterwards he frisked me and than left. I never found out who may have called in a complaint that day, or if a complaint was even made. I did not file a complaint against Officer Farley with the police as I didn't believe that it was in my best interest to do so.

In another incident, I was doing my lawn care duties and my truck was double parked directly in front of the house on 63rd street, while loading my equipment. Officer Farley and another Officer pulled up right behind my truck and instructed me to get my vehicle out of the street before he issued me a ticket.

Criminal proceeding began with a preliminary hearing on 4/8/2016, and the charges were bound over for trial. An information was filed by the District Attorney's Office on 4/12/2016, on the charges. Formal arraignment was on 4/28/16. The trial schedule was as such: ( See Attachment )(EX B).

At the same time a separate but related criminal action was initiated against me by the United States Office Of Probation and Parole. On 3/14/2016, a request for revocation of my supervised release was filed by Probation Officer Tamika Baxley. ( See Attachment )(EX D). On 3/16/2016, The United States District Court for The Eastern District Of Pennsylvania, issued a summons to appear in court based on the allegations of said arrest and criminal prosecution. ( See Attachment )(EX  ).

The compounded affects of the two criminal actions began to take a toll on me emotionally and on 10/7/2016, it had

-2-

reached a degree that I could not continue and on
10/7/2016, I attempted suicide. I was rushed to the
emergency room of Fitzgerald Mercy Hospital in Yeadon,
Pennsylvania. In a near death state, I was subjected to two
surgeries and countless medical operations. I would remain
there in a comatose state until I was taken into custody by
the Delaware County Authorities on 11/1/2016.( The medical
records are extensive and can be provided upon request ).
   On 10/21/2016, civil forfeiture proceedings were initiated
against the confiscated $301.00 which was in my possession
at time of arrest. However they were terminated in my favor
on 12/1/2017. ( See Attachment )(EX C).

   I remained in the medical ward of Delaware County Prison
until 11/8/2016, when I was extradited to Philadelphia, on
an outstanding warrant in relation to this criminal matter.
On 4/03/2017, a hearing on pre-trial motion to suppress
physical evidence commenced and was denied by the Honorable
Vincent N. Melchiorre. I remained in custody of
Philadelphia throughout the criminal proceedings until I
was extradited to Federal custody on 5/23/2017.

   I have been detained at Federal Detention Center
Philadelphia until the present time. ( See Attachment )(EX
). Revocation of my supervised release was initiated and I
was sentenced by the Honorable Paul S. Diamond to 13months
imprisonment on 1/24/2018. The remaining term of my
supervised release was terminated.

   On 3/13/2018, a verdict of **NOT GUILTY** was ordered,
following a two day bifurcated trial, and the criminal
action disposed of, in my favor, by the Honorable Tracy
Brandies-Roman.

RESPECTFULLY SUBMITTED,

OLUTO KUNBO EFUNNUGA.

DATE 4/01/2018

**CASE MANAGER,**
Authorized by the Act of July 7, 1955, as
amended, to administer oaths (18 U.S.C. § 4004)

-3-

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| OLUTOKUNBO EFUNNUGA | : | |
|---|---|---|
| A.K.A | : | CIVIL ACTION No. **18-924** |
| SHAWN MOBLEY | : | |
| vs. | : | 28 U.S.C. § 1746 |
| STEVEN FARLEY | : | |
| ERIC LEE | : | *FILED* |
| JEFFREY GILSON | : | |
| STEVEN BLACKWELL | : | MAY 03 2018 |
| RICHARD ROSS | : | By KATE BARKMAN, Clerk |
| CITY OF PHILADELPHIA | : | Dep. Clerk |

## VERIFICATION

I, Olutokunbo Efunnuga, Plaintiff in the above -captioned
matter, declare under penalty of perjury that all statements and
facts contained in the foregoing Amended Complaint and Affidavits
are true and correct to the best of my knowledge as provided for
in  28 U.S.C. § 1746, for unsworn verifications.

RESPECTFULLY SUBMITTED,

OLUTOKUNBO EFUNNUGA

DATE **4/10/2018**